(C. D. 869)

SHEPHERD CHEMICAL CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 22, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: Merchandise described on the invoice as powdered nickel residue in oil was entered at Cincinnati, Ohio, and was assessed for duty under the provision for waste not specially provided for under paragraph 1555 of the Tariff Act of 1930 at 7½ per centum ad valorem in accordance with the rate provided in the trade agreement with the United Kingdom (T. D. 49753). The material was contained in iron drums and these were assessed at 25 per centum ad valorem under paragraph 328 of the same act as cylindrical or tubular tanks or vessels, for holding gas, liquors, or other material, whether full or empty. The collector of customs also imposed the import tax levied by sections 2490 and 2491 of the Internal Revenue Code (U. S. C. 1940 ed., title 26). The plaintiff herein objects to each and all of these levies, but at the hearing counsel for the importer, the plaintiff, made the following announcement:

The protest covers all phases of these issues, but we now abandon the protest except insofar as it pertains to the claim on the commodity as an entirety and its classification under paragraph 1555 as waste * * *.

Later in the hearing counsel for the importer stated:

* * *. I am quite willing to concede that it is properly classified and dutiable at 7½ cents per pound under paragraph 1555 if it is not entitled to free entry under paragraph 1664.

These concessions narrow the issue materially so that the only point before us for determination is whether or not the merchandise is entitled to free entry under paragraph 1664 of the Tariff Act of 1930, which is in the following language:

PAR. 1664. Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.

Full consideration of the testimony and arguments presented to us in this matter requires the conclusion that the material or substance herein involved does not fall within the scope of paragraph 1664, *supra*, and is not, in fact, any of the materials or substances specified therein. The reasons for this belief are quite conclusive.

The testimony is to the effect that the merchandise is a "spent catalyst," that is to say a catalyst that has been used as such so much or so often—the testimony is not clear on that point—that its efficacy or potency as a catalyst has been exhausted. A full explanation of the purpose and method of using nickel catalysts is found in the decision reported as *Andrews* v. *United States*, 25 C. C. P. A. (Customs) 437, T. D. 49507 (cited in the acting appraiser's report with papers). There the court quoted from Kingzett's Chemical Encyclopaedia (Fourth Edition) at page 481 as follows:

* * * it [referring to nickel] finds further use as a catalyst in connection with a number of processes, including hydrogenation. * * *.

Nickel salts, including the chloride, sulphate, and fluoride, are used in nickel-plating, the last named giving a finer-grained deposit with high tensile strength and greater hardness.

For use as a catalyst the metal is prepared by heating the hydrated oxide, carbonate, formate, or oxalate at from 250° to 300° C. in the absence of air, although when obtained by reduction it is liable to contain some unstable hydrides.

When used in connection with the hydrogenation of oils, it can be regenerated by removing the oil with a solvent, then treating the catalyst with some agent capable of dissolving the film of oxide on the metal, washing, and sealing it against access of air.

The components of the commodity before us as shown by the analysis, copy of which is in evidence as exhibit 1, are metallic nickel powder, infusorial earth, nickel oxide, and approximately 41 per centum of fatty oil. It needs merely a statement of these components to demonstrate that the article is not a crude metallic mineral substance.

The evidence in the case fails to establish that the article in suit is a crude metallic mineral substance. Such proof was absolutely

necessary to the importer's case. The Court of Customs and Patent Appeals stated in the case of *Whitehall Shipping Co.* v. *United States*, 29 C. C. P. A. (Customs) 126, C. D. 181, at 130:

The collector having classified the involved merchandise as *aluminum* in crude form, the burden was upon appellant to overcome the presumption of correctness attending the collector's classification by establishing not only that the collector was wrong, but that appellant's contention was right. In other words, the burden was upon appellant to establish that the involved merchandise is a waste, *not specially provided for,* under paragraph 1555, *supra,* rather than *aluminum in crude form* provided for in paragraph 374.

In the instant case, the collector having classified the involved merchandise as waste, the burden was upon appellant to establish that it is a metallic mineral substance in a crude state, not specially provided for, within the purview of paragraph 1664, *supra.* It is clear for the reasons above set forth that the claim of the plaintiff has no basis in law. No useful purpose would be served by lengthening this opinion by a discussion of the other points raised by counsel.

The protest is overruled and the decision of the collector affirmed. Judgment will be rendered accordingly.